Silvers v. Potter.

GEORGE M. SILVERS

v.

LEWIS C. POTTER and GRACE POTTER.

1. While a trust in lands, created by parol, must, in an attempt to enforce the trust, be manifested by writing duly signed, it is competent, after the trust has been terminated, by a conveyance of the property by the trustee, to prove the trust by parol evidence.

2. The true consideration of a deed may be shown by parol evidence, though it vary from that expressed.

On bill, answer, replication and proofs in open court.

*Mr. Anthony Engelbrecht* and *Mr. Stephen B. Ransom*, for the complainant.

*Mr. Henry S. White*, for the defendants.

GREEN, V. C.

This action was originally brought by George M. Silvers, as an attaching creditor of the defendant Lewis C. Potter, to set aside a conveyance, made by Lewis C. Potter to the other defendant Grace Potter, of certain lands at Rutherford, in this state. The attachment was issued April 25th, 1888, and levied on the property in question.

Waldorf H. Phillips, a creditor, applied under the attachment in the suit, and judgment was entered March 12th, 1889, in favor of Silvers and Phillips, for the amount of their claims, respectively, as proved. Subsequent to the commencement of this suit Waldorf H. Phillips was admitted as a party complainant herein.

The property in question originally belonged to Sarah L. Potter, the mother of the defendants, who, by a deed dated May 24th, 1881, conveyed the same to the defendant Lewis C. Potter. This deed is expressed to have been " in consideration of one

Silvers *v.* Potter.

dollar and other good and valuable consideration." It was not recorded until November 20th, 1886.

The deed sought to be set aside as fraudulent was made by Lewis C. Potter to Grace Potter, and is dated November 18th, 1886, and was recorded November 23d, 1886, and is, as expressed, "in consideration of one dollar and other valuable consideration."

A release from taxes, given by the inhabitants of Bergen to Lewis C. Potter, dated December 12th, 1881, and recorded November 20th, 1886, was also put in evidence.

The bill claims that the conveyance of this property by Lewis C. Potter to his sister, by the deed dated November 18th, 1886, was fraudulent and void as against creditors, and particularly as against the complainant.

The answer of the defendants is, that this property was originally owned by their mother, and was by her conveyed to her son Lewis, to be by him held in trust for himself and his brother and sisters, two of whom were infants, in order to enable the property to be sold without much expense and trouble, he being the only male member of the family who was of age; and that he, being perfectly solvent, and about to change his residence from the State of New Jersey and begin business elsewhere, deemed it better to put the title of the property in the name of his sister, who was at home taking charge of the children, and who could execute a deed for the property, if a purchaser was found therefor, with less trouble and expense, and that the understanding was, and is, that Grace Potter is to hold the land and premises subject to the same trust under which he held them, and that each of the said children had an equal interest in the lands and premises, namely, one-sixth. That before the time of the conveyance to his sister, he had used money which belonged to his brother and sisters, and was indebted to them, and that his interest in the premises was to be held by his sister for herself and her other brother and sisters, and that said conveyance was given, so far as his one-sixth interest was concerned, to pay and satisfy that indebtedness.

In short, the defence is that Lewis C. Potter held the title to this property, for the purpose of making title to any purchaser who might be obtained, for the benefit of his mother, his brother, sisters and himself; that he was indebted to them and conveyed this property to his sister, charged with the same trust under which he held it, and that so far as he might have had any interest in the property, it was to pass under the deed, in payment of his obligation.

The conveyance to the sister was in the lifetime of the mother. The complainant insists that this was a voluntary conveyance, which, under the decision of *Hagerman* v. *Buchanan, 18 Stew. Eq. 292,* was absolutely void as against creditors whose debts existed at the time. So far as the indebtedness to the complainant Silvers is concerned, it was not incurred until after the conveyance, and the principle invoked does not apply.

The judgment of Phillips is based upon a claim for services rendered by him, as a member of the bar of New York, through a series of years anterior to the date of the deed. These services were performed, as he says, in his capacity as counsel for these parties, in litigations and advice with reference to their property. It would appear, although not clearly, that this property had once been owned by the father of these defendants, and had been conveyed by him through a third party to his wife, their mother. That subsequently he had made an assignment, and that that assignment had been filed in New Jersey. The litigation in which Mr. Phillips was employed had taken place in New York, I assume, against the assignee. The defendants insist that the principle referred to does not apply in this case with reference to the claim of Phillips, and that the complainants can have no relief on the ground that the conveyance attacked is tainted with actual fraud, because the deed from Lewis C. Potter to Grace Potter was not a voluntary conveyance, but only a transfer of a trust estate upon which neither of the complainants ever had any lien at law or in equity.

The important question is in regard to the character of the interest which Lewis had in this property. The deed from his

mother to himself is, on its face, an absolute conveyance of the property with covenants of warranty.

It is claimed that parol evidence is not admissible to establish the fact that this was a conveyance of this property, by the mother to the son, to be held in trust by him for her and his brothers and sisters.

If the effort on the part of the defendants at this time, was to establish such a trust, then the contention of the complainant would be well founded; neither the mother, nor any one claiming under her, could, under the statute of frauds, in the face of this absolute conveyance, establish, by parol testimony, that it was only a conveyance of the property to Lewis in trust. Nor could Lewis, under the statute of frauds, make an effective parol declaration of trust of the lands conveyed to him by such a deed. But it was entirely competent for Lewis, so long as he held the title to the property, to have made a *bona fide* declaration of trust in writing, and, if so made, the same would have been valid against his heirs and creditors.

If he had not made this deed, but had *bona fide* executed a proper declaration of trust, it would have been good against these creditors, even if made after their attachments had been levied. *Gardner* v. *Rowe, 2 Sim. & S. 346; S. C. on appeal, 5 Russ. 258.* "A lease was granted to W., who afterwards committed an act of bankruptcy and then executed a deed stating that his name had been used in the lease in trust for R., and declaring the trust accordingly." A bill was filed on behalf of the creditors of W., under the commission in bankruptcy, claiming the lease as part of his estate, and the court directed an issue to try whether W.'s name was used in the lease as a trustee for R. The jury having found a verdict in the affirmative, it was held that the declaration of trust was valid, though executed after bankruptcy, and that the lease did not pass to W.'s assignee. The question in such a case, is, of course, whether the estate was in fact conveyed in trust.

The statute of frauds covering this point is a rule of evidence. It provides that the trust must be manifested or proved by a sufficient writing, but a trust can still be created by parol. It

cannot be enforced in a court while it rests in parol alone, because the statute. intervenes and says that it must be manifested or proved by writing.   There is, however, nothing which requires that the writing should be executed at the time that the trust is created—in fact, it may continue to rest in parol and not be declared until the trustee dies, and then may be so declared by his will.

*Lewin on Trusts (Text-Book series), Vol. 1 p. 138:* "The statute will be satisfied if the trust can be manifested and proved by any subsequent acknowledgment by the trustee, as by an expressed declaration by him or any memorandum to that effect, or by a letter under his hand, by his (signed) answer in chancery, or by an affidavit, or by a recital in a bond or a deed, and the trust, however late the proof, operates retrospectively from the time of its creation." *Dean* v. *Dean, 1 Stock. 425 ; Ownes* v. *Ownes, 8 C. E. Gr. 60 ; Jamison* v. *Miller, 12 C. E. Gr. 586 ; McVay* v. *McVay, 16 Stew. Eq. 47 ; Newkirk* v. *Place, 2 Dick. Ch. Rep. 477.*

We have, then, this condition.   Mrs. Potter conveyed this property by an absolute deed to her son.   It may have been that, at the time of such conveyance, a trust was created by parol, which trust would continue impressed upon Lewis's estate in conscience, but which could not be enforced in any court because not manifested in writing.   He does not make any declaration of the trust in writing.   He, however, says that he has executed the trust ; that so far as he is concerned he holds the title no longer, and that his trust has been discharged.

The effort, then, of the defendants is not to enforce a trust. They say the trust is at an end so far as Lewis is concerned, and the question which is then presented is the same as that which would have been presented had Lewis made a declaration of trust in writing, namely, was any trust, in fact, created by parol at the time his mother conveyed the property to him ?

This is a question which must be settled by parol testimony. When rights of third parties intervene, and a question is raised whether a trust by parol has in fact been created, recourse must

necessarily be had to parol testimony to prove what actually took. place.

In *Smith* v. *Howell, 3 Stock. 349* (at *p. 358*), Chancellor Williamson says : " The statute does not require that the trust shall be created by a writing, but that it shall be manifested and proved. by writing. This trust was created on the 19th of July, 1828, when the deed was executed to Walter Kirkpatrick; but to manifest and prove this trust a writing was necessary—that is, the *cestui que trust* could not establish the trust by parol. He must prove it by written evidence. When this written evidence. was made, whether it was coeval with the trust or was executed afterwards, cannot effect the trust. A question of fraud—that is, whether the trust was really created at the time of the execution of the instrument, or deed to which the manifestation of the trust refers—is always an open question. Suppose a judgment, or some other lien, had attached to the property in the interval. between the execution of the deed and the declaration of trust, it would have been necessary, in order to defeat such lien,. to show that the trust was *bona fide* created at the time of the execution of the deed. This, however, might be done by parol ;. because the statute does not require that the trust should be created but only manifested in writing." In *Jamison* v. *Miller, 12 C. E. Gr. 586* (at *p. 592*), Mr. Justice Dixon says : " The parties able to create the trust were Charles and James Dugan, in whom, except for this trust, the whole legal and equitable estate vested at. the time this trust was created. Charles, under whom the complainant claims, declared the trust in his letter to Mrs. Jamison before the complainant's alleged rights attached. Since that time. James has evidenced the trust by executing it ; and Charles and James have both united in a manifestation of it by their joint answer in this cause. The fact that these later writings were signed. after the complainant's claims intervened, does not rob them of their efficacy under the statute. The writings are but evidence ;. the trust is anterior and independent ; and the rights which the court regards are those that spring from the creation, not the mere. proof of the trust. There is no inequity in permitting the trustee of an express trust to make evidence upon which the courts can.

Silvers v. Potter.

recognize and effectuate it, in order that the expectations of his creditors, who attempt to enforce their remedies against the trust estate, may be disappointed," citing *Gardner* v. *Rowe, supra.* See, also, *Eaton* v. *Eaton, 6 Vr. 290.*

We have, then, Lewis Potter in the position of having executed the trust, if one existed, with the only question remaining as to whether the property was in fact conveyed to him in trust, upon which question parol evidence is admissible.

He says that his mother thought it was best to dispose of this property as they needed the money very badly; that he went to Mr. Phillips, who was doing legal business for him at that time, and asked him what would be the best method for him to dispose of the property, whether his mother could sell it, she being an invalid, and he (Phillips) told him that there was a cloud on the title, and that neither he (Potter) nor his mother could not dispose of the property, and that he (Potter) had better have that property made over in his name if his mother wanted to dispose of it for their benefit; that Phillips drew the deed, and that the property became his (Potter's) to dispose of for the benefit of his mother and his sisters and brother. After the death of his mother he was to do the same thing for his brother and sisters—that is, dispose of the property if it could be done.

No actual consideration was paid by him to his mother for the conveyance.

Mr. Phillips, one of the complainants, admits he drew the deed from Mrs. Potter to her son. He did not see Mrs. Potter, but thinks she wrote a letter to him, his conference having been with her son Lewis.

He was asked, "Who advised that the deed be made?" and he says: "There was some trouble about the title to the property as it stood; I was asked which was the best way to clear up the title, and I gave that advice." He was asked, "You advised Mrs. Potter to convey it to her son?" to which he says, "I told Dr. Potter so." He says further, in substance, they were desirous of selling it so as to pay him (Phillips); there was a flaw in the title, and he gave the advice to clear up the title;

35

that it was deeded by his advice to the son—he advised that the title could be cleared up in that way. He did not see Mrs. Potter at all in the matter, but advised Dr. Potter that the title could be cleared up in that way. Afterwards that he advised the deed, so that it could be sold by him (Lewis); he advised its being put in his name; that there was an equitable and legal title, and that was to merge the two so that he could sell it. So far as he (Phillips) understood at the time, it belonged to his (Potter's) mother.

From this evidence it appears that the property belonged to Mrs. Potter, and that by the advice of this complainant Phillips it was conveyed by her to her son so that a title could be given for it. We are not favored with any explanation as to how the mere conveyance by Mrs. Potter to her son could enable him to give any better title than she could herself, but we have knowledge brought to him (Phillips) that this conveyance was simply a transfer of the title for the purpose of enabling the son to make a sale of the property for the benefit of the family. This is re-enforced by the statement of Lewis himself as to the terms under which he received and held the title.

This is a creditor's bill, which is allowed in this state to be maintained by an attaching creditor, whose writ had been levied upon real estate, for the purpose of clearing up any legal cloud which may rest upon the title of the defendant in attachment. The attachment is levied upon the right, title and interest of the defendant in attachment in the real estate levied upon. The theory is that no realization by proceedings at law can be had of such levy, because some impediment has been interposed by a fraudulent conveyance, and the bill is suffered to be brought for the purpose of removing this obstacle, in order that the legal process may reach the interest of the defendant. If that interest is a beneficial one which inures to the advantage of the defendant, the attachment levy has seized something substantial. If, however, the defendant in attachment holds the property or has held it simply as a naked trustee, the levy of the attachment has taken hold of nothing which can be transformed into satisfaction of his debts.

Lewis had no title to this property at the time the attachment was levied. The only title which he ever held in it was by the deed from his mother, which was executed to him under such circumstances that he must be regarded simply as a trustee. Any beneficial interest which he might have had prospectively in the property on the death of his mother, which did not happen until after the conveyance to his sister, cannot be considered as one reached by the attachment.

The views above expressed would render an examination of other points unnecessary, unless it is that Lewis has a beneficial interest in an undivided sixth of the property.

It is claimed, however, that any interest Lewis might otherwise have had in the property, was conveyed by the deed in discharge of an indebtedness to his mother. The deed is expressed to be "in consideration of one dollar and other valuable consideration." On the trial it was proposed to show the true consideration, which was objected to on the ground that parol evidence could not be received to show any consideration other than that so expressed. This position is untenable. The authorities in this state are clear, that the true consideration of a deed may be shown by parol, though it vary from that expressed, but not to vary or enlarge the grant. *Morris Canal* v. *Ryerson, 3 Dutch. 457.* The recital in the deed is not conclusive as to the amount of the consideration. *Adams* v. *Hudson County Bank, 2 Stock. 535 ; Herbert* v. *Schofield, 1 Stock. 492.* If it was otherwise, the evidence in this case was still admissible. The objection is based on the general rule that parol evidence is inadmissible to vary a written contract. But the evidence, offered and produced, cannot be claimed to vary or change even the terms of the consideration named in this deed, for it is expressly stated to be "in consideration of one dollar and other valuable consideration."

It appears that Lewis had, some years before, induced his mother to mortgage a piece of property which she owned in Brooklyn, to raise the sum of $900 to loan to him to go into a business speculation, on the promise by him to pay it back to her as soon as he could; that he was unsuccessful in his venture,

and the result was that the mortgage on the Brooklyn property was foreclosed, the property sold, bought in by a stranger and lost to the family, and that it stood as a claim against him, which he recognized at the time of his conveyance of the property to his sister.

It is urged, by the other side, that Lewis had contributed from time to time, to the support of the family, sums of money which were more than sufficient to have discharged any assumed indebtedness.

This is a question of payment which it was for them to settle among themselves. If the son borowed money from his mother, to procure which she mortgaged her estate, and lost it under foreclosure, and the son afterwards elected to contribute to the support of his widowed mother and sisters and infant brother, without regarding such donation as a payment of his indebtedness, the transaction is not obnoxious to any principles of law, equity or honesty, and will not be disturbed unless other facts disclose the taint of a fraudulent intent.

In considering the question as now presented, we assume that Lewis held the title for his mother, five other children and himself, each on the death of the mother to be entitled to one-sixth, which would give Lewis a prospective one-sixth interest in the property, and that Grace, the mother being now dead, would hold an undivided sixth for the benefit of Lewis, if he has not parted with it. They both claim he has no interest, having transferred it in payment of his indebtedness to his mother.

It was entirely competent, under the decisions in this state, for Lewis to convey his interest in discharge of an indebtedness to his mother or sisters and brother, and if the same was done in good faith it was perfectly good as against his other creditors, being only a preference given by him to the claim of his relatives over that of the others. There is nothing in the evidence to show that the value of one-sixth of this estate was worth more than $900, the amount advanced to him by his mother, nor do I discover any indications of fraud to even bring suspicion on the transaction, or to defeat the contention of the defendants that this

was not a voluntary conveyance of any interest Lewis had, if he in fact had any.

In my opinion this suit cannot be maintained, and the bill should be dismissed, with costs.