13 N.J. Super. 367 (1951)
80 A.2d 464
MARY COLES, ADMINISTRATRIX AD PROSEQUENDUM OF WILLIAM J. COLES, PLAINTIFF,
v.
OSCAR OSBACK, MINNIE L. OSBACK AND EDWIN ERIC OSBACK, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 20, 1951.
*368 Mr. Thomas F. Carlin, attorney for plaintiff.
Mr. Walter H. Jones, attorney for defendants.
GRIMSHAW, J.S.C.
On December 18, 1947, the plaintiff, Mary Coles, and her husband, since deceased, became involved in an automobile collision with a fire truck, owned by the Township of Lyndhurst in Bergen County, and driven by the defendant Oscar W. Osback, a volunteer fireman. As a result *369 of the litigation which arose out of the action, the plaintiffs, on December 28, 1949, obtained a judgment against the defendant Osback, in the sum of $10,675.
In this suit the plaintiff seeks to have set aside a conveyance dated February 16, 1948, made by Oscar W. Osback and wife, to his son Edwin Eric Osback, of property known as 441 Post Avenue, Lyndhurst. Plaintiff charges that the conveyance was without consideration and in fraud of the rights of the plaintiff as a creditor of Oscar W. Osback. In his answer the defendant Oscar W. Osback says that he held the property as trustee for his son Theodore Osback and that the questioned conveyance was made in execution of that trust.
From the testimony the following facts appear:
On August 2, 1940, Theodore Osback purchased the property which is the subject of this litigation. At the time of the purchase, Theodore was 20 years old. According to Theodore's story the bank which was to finance the transaction was unwilling to lend money to the elder Osback, and, as a result, title was taken in the name of Theodore Osback. The purchase price was $3,000. Of this sum Theodore paid $300 in cash and executed a purchase money mortgage in the sum of $2,700.
After the purchase the Osbacks lived together in the house on the property. The family consisted of Mr. and Mrs. Osback, Theodore, and his brother Edwin. In May of 1941 Theodore married and brought his wife to live in the home.
In November, 1942, Theodore enlisted in the Navy and served throughout the war in the Pacific theatre. As was so common, Theodore had a rough time. The ship on which he was serving was sunk, but he survived. In May of 1945 he came home on furlough. His experiences having made him doubtful of the future, Theodore talked with his father and expressed a desire to put his affairs in order, in case anything should happen to him. His assets consisted of the house and an insurance policy of $10,000. Theodore had arranged that the policy should go to his wife but felt that his father and mother should have the house. Accordingly, he conveyed the *370 Post Avenue property to his father and mother as tenants by the entirety without consideration, but upon the understanding that if he returned safely the property would be reconveyed to him.
In November 1945, Theodore was discharged from the service and returned to the family home. There he remained until August 1947, when a prospective increase in his family caused him and his wife to decide that they needed more room than the Post Avenue house afforded. Theodore, in a discussion with his family, pointed out that he needed a house of his own and said that Oscar W. Osback should convey the family home to Edwin. In that way both sons could take advantage of their veteran's exemptions and would each have a home. And; in addition, they would be complying with the wishes of their mother, who wanted one of the sons to hold title to the Post Avenue house.
Oscar Osback conveyed the property to Edwin in February, 1948, about a month and a half after the accident. Oscar Osback had not paid anything to Theodore for the conveyance to him, nor did he receive any consideration from Edwin. Oscar had paid the taxes, insurance and mortgage interest while he held the property, but, on the other hand, he paid no rent.
After he took title, Edwin took care of the mortgage and tax payments. With the exception of a short period, Edwin and his wife have lived in the home with his father. Minnie Osback died September 6, 1950.
Plaintiff says that the conveyance from Oscar Osback to his son, Edwin, was a voluntary conveyance and was, therefore, void as against the plaintiff. Defendants, on the other hand, say that Oscar W. Osback had no beneficial interest in the property and was only a trustee for Theodore. They insist that the conveyance from Oscar to Edwin was not a voluntary conveyance but was a tranfer in execution of the parol trust agreement with Theodore.
The deed from Theodore to his father, Oscar, on its face was an absolute conveyance. And it is claimed that *371 parol evidence is not admissible to establish the fact the conveyance was upon a trust. That, however, is not the law. If the defendants were seeking to establish the trust, then the contention would be well founded. Neither Theodore nor anyone claiming under him under the statute of frauds could prove that the absolute conveyance was, in fact, a conveyance in trust. Nor could Oscar Osback make an effective parol declaration of trust of the lands conveyed to him by such a deed. It was entirely competent, however, for Oscar, as long as he held the title to the property, to have made a bona fide declaration of trust in writing, and if so made, the same would have been valid against his heirs and his creditors. If he had not made the deed but had executed a bona fide declaration of trust, it would have been good against those creditors even if made after the judgment had been obtained. Silvers v. Potter, 48 N.J. Eq. 539 (Ch. 1891).
The statute of frauds covering this point is a rule of evidence. It provides that the trust must be manifested or proved by a sufficient writing, but a trust can still be created by parol. It cannot be enforced in a court while it rests in parol alone, because the statute intervenes and says that it must be manifested or proved by writing. There is, however, nothing that requires that the writing should be executed at the time that the trust was created. In fact, it may continue to rest in parol and not be declared until the trustee dies and then may be so declared by his will. Or the statute will be set aside if the trust can be manifested and proved by any subsequent acknowledgment by the trustee, as for instance, as here, by a deed. And the trust, however late the proof, operates retrospectively from the time of its creation. Iauch v. de Socarras, 56 N.J. Eq. 538 (Ch. 1898).
Oscar Osback made no declaration of trust in writing. He said, however, that he had executed the trust and that so far as he is concerned he holds the title no longer and his trust has been discharged.
The effort of the defendants is not to enforce the trust. They say the trust is at an end. The question is the same as *372 that which would have been presented had Oscar made a declaration of trust in writing. It must be answered by parol testimony. When rights of third parties intervene and the question is raised whether a trust by parol has, in fact, been created, recourse must necessarily be had to parol testimony to prove what actually took place. Iauch v. de Socarras, supra.
It may very well be that the deed to Edwin was hurried along by the existence of plaintiff's claim. And it may also be that Oscar was seeking to avoid his own creditors. But neither of these arguments presents a reason for voiding the deed if the trust was sufficiently established. There is no inequity in permitting the trustee of an express trust to make evidence upon which the courts can recognize and effectuate it in order that the expectations of his creditors who attempt to enforce their remedies against the trust estate may be disappointed. Jamison v. Miller, 27 N.J. Eq. 586 (E. & A. 1876).
In order to set aside the deed it would be necessary to brand Theodore and his brother as perjurers. That I am unwilling to do. The reason Theodore gave for the conveyance to his father was reasonable and understandable. It stands without contradiction.
Plaintiff says that the conveyance is a fraud upon her. As was said by Judge Learned Hand, "Perhaps this ought to be the law, but in fact it is not. While as against the grantee the cestui que trust has no rights which he can enforce, still if the grantee chooses to recognize his `moral' obligation, as it is called, his creditors may not complain." Bryant v. Klatt, 2 F.2d 167 (S.D.N.Y. 1924); U.S. Fidelity & Guaranty Co. v. Mills, 146 F.2d 694 (C.C.A. 4, 1944).
I hold, therefore, that the conveyance by Osback to his son, in recognition of the fiduciary origin of his estate, was not a fraud upon plaintiff even though the trust rested in parol and could not have been enforced by Theodore or Edwin.
Complaint dismissed.